IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

MAR 22 2011
@ 5:00 pm

MATTHEW J. DYKMAN
CLERK

| UNITED STATES OF AMERICA, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No. 2:10-cr-03163-RB |
| JESSE W. NICHOLSON, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Jesse Nicholson's Motion to Suppress Statements. (Doc. 31.) Having held an evidentiary hearing, reviewed the parties' memoranda and the relevant case law, and otherwise being fully informed, the Court concludes that the first statement made by Defendant to Special Agent Hansen when he was informed of the reason for his arrest is admissible, that the second statement made to Agent Hansen in response to his inquiry about how Defendant packaged his dietary supplements is not admissible, and that the third statement made to Agent Hansen in response to his inquiries about basic biographical information is admissible. Accordingly, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Suppress Statements.

### I. BACKGROUND

A jury trial in this case is scheduled for Monday, March 28, 2011 in Las Cruces, New Mexico. In anticipation of trial, Defendant filed a Motion to Suppress Statements on February 18, 2011. (Doc. 31.) Defendant argues that his Fifth Amendment privilege against compulsory self-incrimination prevents the government from presenting at trial any of the statements he made to

Special Agent Eric Hansen of the Drug Enforcement Administration (DEA) following his arrest on June 25, 2010 because they resulted from a custodial interrogation not preceded by the requisite *Miranda* warnings. The United States filed a Response to Defendant's Motion to Suppress Statements on March 4, 2011. (Doc. 39.) The government acknowledges that Defendant was not given his *Miranda* warnings, but argues that the statements are admissible because they did not result from a custodial police interrogation. An evidentiary hearing in this matter was held on March 17, 2011 before the Honorable Hayden Head, Senior United States District Judge for the Southern District of Texas, on inter-circuit assignment in Las Cruces, New Mexico.

## II.   FINDINGS OF FACT

On June 17, 2010 at 11:42 a.m., Officer Doyle Baker of the Roswell Police Department observed a green Land Rover fail to maintain its lane when making a left-hand turn onto Main Street at a busy intersection in downtown Roswell, New Mexico. (Gov't Ex. 19.) Officer Baker conducted a traffic stop, and when he approached the driver's side window of the vehicle to talk to Defendant, he perceived the odor of burnt marijuana. Officer Baker accordingly asked Defendant to step out of the vehicle. As Defendant was exiting the vehicle, Officer Baker observed two glass smoking pipes in the driver's door pocket of the type that are commonly used to ingest methamphetamine. Officer Baker asked for consent to search the vehicle. Defendant refused and asked to call his attorney. Officer Baker then issued Defendant a citation for failure to perform required position and method of turn, informed him that he was seizing the vehicle, and told him he was free to leave.

The vehicle was towed to the Roswell Police Department, and Officer Baker set about obtaining a search warrant, which was granted later that day. A search of the vehicle yielded various items, including over fifty grams of methamphetamine hidden underneath the dashboard, a loaded

.40 caliber pistol, a scale, assorted pills, marijuana seeds, small plastic baggies, and a small notebook with items written down in it. Based on the evidence that was seized from the vehicle, an arrest warrant was issued for Defendant on June 24, 2010 for the offense of Possession with Intent to Distribute over Five Grams of Methamphetamine. (Doc. 2.) On June 25, 2010, Special Agent Eric Hansen and Roswell Police Officers Mark Mahone, Richard Romero, and Mike Stanton executed the warrant and arrested Defendant at a residence on North Kansas Street in Roswell.

Defendant was placed in Officer Mahone's patrol car to be transported to the federal courthouse in Roswell. Agent Mahone drove the vehicle and Special Agent Eric Hansen of the DEA rode in the passenger's seat. As nobody had yet advised Defendant why he was under arrest, Agent Hansen informed him that he had been arrested for possession of methamphetamine with intent to distribute stemming from the traffic stop by Officer Baker and the subsequent seizure and search of his vehicle that had occurred a few weeks prior. Defendant inquired, "What Methamphetamine?" and then stated, "Oh! You found my vitamin supplements." (**First Statement**) Agent Hansen responded, "Vitamin supplements?" and then asked, "How do you package your vitamin supplements?" Defendant indicated that he bought the supplements in bulk and broke them down into smaller quantities which he put in plastic baggies for individual dosage units. (**Second Statement**)

When Agent Hansen and Defendant arrived at the federal courthouse in Roswell, they had approximately one hour before they were scheduled to go before United States Magistrate Judge Kea Riggs for an initial detention hearing. Agent Hansen decided to use this time to fill out DEA Form 202, which is a biographical form requesting the suspect's basic personal information for identification purposes—date of birth, social security number, family members, address, and phone

number. While Agent Hansen was asking Defendant for this information, Mr. Nicholson stated, "Well, you know, actually I do use methamphetamine for weight loss because my girlfriend thinks I'm heavy. But never more than a gram or two at a time." Unprompted by Agent Hansen, Defendant continued, "And that gun, that's my girlfriend's and sometimes she forgets to get it out of the car before I borrow the car." (**Third Statement**) Agent Hansen made no inquiries or statements to Defendant to elicit this information, but was merely asking the biographical questions from the form.

### III. ANALYSIS

In *Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966), the Supreme Court held "that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized"; accordingly, certain "[p]rocedural safeguards must be employed to protect the privilege." *Id.* at 479. Namely, the suspect "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Id.* Once these warnings have been provided, "the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." *Id.*

Notably, *Miranda* only prohibits the use of statements obtained as a result of police "interrogation." Accordingly, volunteered statements made to police officers while a suspect is in custody, and not obtained as the result of police interrogation, are not excluded under *Miranda*:

The fundamental import of the privilege while an individual is in custody is not

whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. *Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.*

*Id.* at 478 (emphasis added); *see also United States v. Muniz*, 1 F.3d 1018, 1022 (10th Cir. 1993) ("If a person voluntarily speaks without interrogation by an officer, the Fifth Amendment's protection is not at issue, and the statements are admissible."). Accordingly, provided that Defendant's statements were voluntary and not the product of police interrogation, they are admissible.

In determining whether a suspect's statements were voluntary and not coerced, the Court must look at the totality of the circumstances, considering age, lack of education, intelligence, and the details of the detention. *Muniz*, 1 F.3d at 1022. In the case at hand, the circumstances surrounding Mr. Nicholson's detention and statements do not bear any of the hallmarks of involuntariness: for instance, Defendant is not alleged to be a minor or of extremely low intelligence, and the detention is not alleged to have been exceptionally long or coercive. Furthermore, in his motion, Defendant does not attack the admissibility of his statements on the grounds that they were coerced or involuntary. Thus, for purposes of this motion, the Court concludes that Defendant's statements were voluntary.[1]

The determinative issue in this matter, therefore, is whether the statements were made in response to police interrogation, as opposed to being voluntary and spontaneous declarations, that

---

1. At the evidentiary hearing in this matter, the government requested that the Court make a ruling with regard to the admissibility of Defendant's statements for impeachment purposes. Under *Oregon v. Hass*, 420 U.S. 714, 722–24 (1975), a statement obtained without proper *Miranda* warnings may be admissible for impeachment purposes, provided it was voluntarily made. While there was no evidence presented indicating that the statements were involuntary, the Court stated at the hearing that it would not take the matter up at that time, concluding that the admissibility of any statements for impeachment purposes should be addressed by the presiding judge at trial.

are not subject to the Fifth Amendment's protections. Interrogation results when there are "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). "*Miranda* does not bar the admission of volunteered statements that are not in response to police questioning." *United States v. Glover*, 211 Fed. App'x 811, 814 (10th Cir. 2007). Additionally, *Miranda* does not bar statements made in response to procedural-type police words or actions "normally attendant to arrest and custody." *Innis*, 446 U.S. at 301. In other words, following an arrest, police inquiries into a suspect's basic information, which are procedural in nature and not intended to elicit information about criminal activity, generally do not constitute police interrogation. *See United States v. Blackmon*, 1998 WL 109992 (6th Cir. 1998) (unpublished); *United States v. Taylor*, 799 F.2d 126, 128 (4th Cir. 1986) ("taking of standard identification information does not violate *Miranda*"); *United States v. McLaughlin*, 777 F.2d 388, 391 (8th Cir. 1985); *United States v. Menichino*, 497 F.2d 935, 941 (5th Cir. 1974) (concluding that Miranda did not apply because "[t]he interrogation appears to have been a straight-forward attempt to secure biographical data necessary to complete booking, and the questions asked did not relate, even tangentially, to criminal activity"). Such non-accusatory, police-suspect interactions do not meet the definition of "interrogation," which encompasses only those "words or actions . . . reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 301.

In the case at hand, once Defendant was arrested, he was placed in the back of Officer Mahone's patrol car. On the way to the federal courthouse, Agent Hansen explained to Defendant why he had been arrested. Defendant stated, "Oh! You found my vitamin supplements." This

voluntary and spontaneous statement was not obtained as a result of police interrogation. Telling a suspect about the charges for which he has been arrested is the type of procedural statement that normally accompanies an arrest and detention by police, and it was not a police-suspect interaction one would consider likely to elicit an incriminating response. Accordingly, the Court concludes that the first statement was not obtained through police interrogation, and therefore, it is admissible.

On the other hand, Defendant's second statement about how he packaged the supplements for individual doses was made in response to the kind of express questioning regarding criminal activity that one associates with a custodial police interrogation. In contrast to the standard, procedural statements or inquiries that an officer might typically make to a suspect following his arrest—such as informing the detainee of the charges against him or asking his name—Agent Hansen's inquiry, "Vitamin supplements?" was clearly accusatory and aimed at eliciting an incriminating response. *See United States v. De La Luz Gallegos*, 738 F.2d 378, 380–81 (10th Cir. 1984). Agent Hansen continued, "How do you package your vitamin supplements?" Again, there was nothing routine or procedural about this questioning; rather, it was precisely the manner of questioning one would expect to observe in a custodial interrogation. Defendant then indicated that he bought the supplements in bulk and broke them down into smaller quantities which he put in baggies for individual dosage units. The Court concludes that this second statement by Defendant resulted from custodial police interrogation, and therefore, it is inadmissible.

Lastly, the third statement, made by Defendant at the federal courthouse while he and Agent Hansen were waiting for the initial detention hearing before Judge Riggs, appears to have been voluntary and not obtained through custodial interrogation. This third statement is somewhat concerning under *Miranda* because Agent Hansen was clearly questioning Defendant; nonetheless,

his inquiries were not the type of "words or actions . . . reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 301. Importantly, Agent Hansen's questions were completely unrelated to the Defendant's alleged criminal activity. Furthermore, Defendant's statements were spontaneous and not responsive to the questions he was being asked. As there was no testimony before the Court indicating an intent to interrogate Defendant—i.e., that the biographical questioning was likely to elicit an incriminating response with regard to any of the elements of the alleged crimes—the Court must conclude that statement three was not the result of custodial police interrogation, and it is therefore admissible.

## IV.   CONCLUSION

Defendant Jesse Nicholson filed a Motion to Suppress Statements (Doc. 31), arguing that his Fifth Amendment privilege against compulsory self-incrimination prevents the government from presenting at trial any of the statements he made to Special Agent Hansen of the DEA following his arrest on June 25, 2010 because they resulted from a custodial interrogation not preceded by the requisite *Miranda* warnings. *Miranda*, however, only prohibits the use of statements obtained as a result of police interrogation; it does not implicate volunteered statements made to officers by a detainee following procedural-type statements or inquiries not reasonably expected to elicit an incriminating response. Accordingly, the Court concludes that Defendant's first and third statements to Special Agent Hansen are admissible, but the second statement is not admissible.

**WHEREFORE**, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Suppress Statements. (Doc. 31.)

*[signature]*
HAYDEN HEAD
UNITED STATES DISTRICT JUDGE